UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ZEB HABIB RAY, )
 )
      Plaintiff, )
 )
v. ) No. 4:01-CV-93 (CEJ)
 )
TRANS STATES AIRLINES, INC., )
 )
      Defendant. )

## MEMORANDUM AND ORDER

This matter is before the Court on defendant's motion for summary judgment. Plaintiff opposes the motion and the issues are fully briefed.

Plaintiff Zeb Habib Ray, a Muslim woman originally from Pakistan and now a United States citizen, worked as a flight attendant for defendant Trans States Airlines, Inc., from February 1993 until her termination on February 16, 2000. She alleges that she was harassed on the basis of her sex, religion, national origin, color, and race, and that she was discharged in retaliation for complaining about the alleged harassment. She brings suit under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e et seq., and the Missouri Human Rights Act (MHRA), Mo. Rev. Stat. §§ 213.010 et seq.

### I.  Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the



court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Fed. R. Civ. P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

## II. Facts

Plaintiff began working for defendant Trans State Airlines in February 1993. In 1996, she met pilot Brad Ray, whom she started dating in 1997 and married in 1998. During their courtship, plaintiff visited Mr. Ray at an apartment (the "crashpad") he shared with several other Trans State pilots and where several employees socialized together. Captain Marshall Bliss, who describes himself as a business partner of plaintiff's husband and a personal friend of

plaintiff, states in his affidavit that he often observed plaintiff at the crashpad joking about religious, racial, and sexual topics. Among other events Bliss reports, plaintiff jokingly told him that he would "go to hell for eating pork" and that "Americans are dirty for eating pork." Bliss states that plaintiff made similar comments to other people. In her deposition testimony, plaintiff denies ever making racial, religious or sexual comments to anyone.

On November 19, 1999, five ground crew employees in Fayetteville, Arkansas filed a report complaining about plaintiff's conduct, both on that date and on several prior trips to Fayetteville. The complaining employees stated that, among other things, plaintiff once "used very curt and unsuitable language about [the] station manager." Another time, when a ground crew trainee made a mistake, plaintiff made several comments in front of the passengers. The letter continued, "We can go on and on but our point is that this person obviously doesn't care to come to this location and we seem to have some problems with her attitude. It's not an isolated situation and we all seem to get along with all the other flight attendants, including [plaintiff's] sister." The employees asked that plaintiff either stop coming to the airport or "keep her comments to herself."

Shonn Clark, defendant's Director of Inflight Services and a personal friend of plaintiff and her husband, investigated the complaints made by the Arkansas ground crew. According to Clark's affidavit, the investigation revealed "corroborating evidence"

indicating that plaintiff had used "unprofessional and discriminatory language" with the ground crew.

The same day the Arkansas ground crew complained, plaintiff wrote the first of four "trip reports" in which she complained of harassment. Plaintiff reported an encounter she had with pilot Todd Baker while they were on break in a crew lounge. Baker was one of the pilots who stayed at the crashpad and with whom plaintiff had a social relationship. Plaintiff complained that, while sitting in the crew lounge on break, Baker pointed to a stack of newspapers and said, "Zeb, look, this fucking Muslim killed those people." Baker then "went on and on" about plaintiff's religion and country. At one point, plaintiff stated, Baker told her to go back to Pakistan. Plaintiff named three people who witnessed the conversation. Plaintiff also stated that this was not the first time that Baker had made racial or religious comments to her.

Randy Zehnder, Assistant Chief Pilot, spoke with Baker about plaintiff's complaints. In a written response dated November 23, 1999, Baker stated that plaintiff called him a "fucking redneck from Memphis" and told him that "Christians will go to hell because they believe in the Bible and not the Koran." Baker concluded by stating that plaintiff "always makes religious comments . . . so she can tell people they are going to hell." Clark spoke with the witnesses plaintiff named in her November 19th trip report, each of whom stated that plaintiff was a willing participant in the conversation with Baker.

- 4 -

On November 23, 1999, plaintiff wrote another trip report, complaining that over the course of several years, pilots Marlin Hiller, Mike Austerman, and Tim Gerrels made comments to her regarding her religion. Clark again investigated plaintiff's complaints. Each pilot denied making the comments plaintiff attributed to him. Zehnder told the pilots to refrain from making religious or racial comments and verbally warned them that violation of the company's nondiscrimination policy would result in discipline, up to and including termination. Zehnder further told the pilots to deal with plaintiff only on a professional basis and only when job duties required them to do so. Zehnder also told Baker to avoid plaintiff "to the fullest extent possible." Based upon the reports by several employees that plaintiff often commented on religion and nationality, Clark advised plaintiff in writing that "ethnic comments and jokes" would not be tolerated.

On January 26, 2000, plaintiff filed a trip report stating that Captain Mike Swoboda told her in front of two witnesses, "I am Jewish, and I eat pork and drink alcohol." When Clark spoke with Swoboda and the two witnesses all denied that Swoboda had made the comment.

On January 27, 2000, plaintiff wrote a lengthy trip report in which she stated, among other things, that Todd Baker had sexually harassed her on several occasions. Clark met with plaintiff to discuss her complaints; he also informed her that flight attendant Stephanie Combest had complained to him that plaintiff started a rumor that Ms. Combest had filed a sexual harassment complaint.

- 5 -

On January 31, 2000, Captain Carl Wegierski wrote a letter to Captain Zehnder.  Wegierski reported that, on January 5, 2000, plaintiff told him she was displeased by management's response to her altercation with Baker.  Wegierski told plaintiff he did not wish to discuss the matter with her.  She was agitated, however, and would not stop.  Plaintiff told Wegierski that Baker had offended her and her family.  She stated she would "write up" Baker, Zehnder and Swoboda in order to ruin their careers.

On February 2, 2000, based on Wegierski's report, Clark suspended plaintiff pending further investigation of what appeared to be her deliberate and false harassment claim against Swoboda.  On February 16, 2000, Clark terminated plaintiff's employment, giving as reasons plaintiff's continued unprofessional conduct and language and her attempt to harm Swoboda's career by filing a false claim of harassment.

### III. Discussion

Plaintiff's complaint alleges discrimination on the basis of race, religion, gender, national origin, and color.  In response to defendant's summary judgment motion, however, plaintiff states that "the import" of her claims is that she was discharged in retaliation for complaining of harassment.  She does not address defendant's arguments with respect to her harassment claims.  Accordingly, defendant argues, and the Court agrees, that plaintiff has abandoned her discrimination claims.

The first issue is whether plaintiff has properly asserted a retaliation claim in her complaint.  The complaint's sole reference

- 6 -

to retaliation appears under the section entitled "Jurisdiction," where plaintiff states that she filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging discrimination based upon race, color, sex, religion, national origin, and retaliation. The EEOC charge is not attached to the complaint nor is it incorporated by reference. Plaintiff does not specifically allege that defendant retaliated against her in either of the two counts of her complaint.

The complaint's indirect reference to retaliation is probably too tenuous to sustain a cause of action on that basis. The Court need not decide the issue, however, because plaintiff has not presented evidence that creates a dispute of material fact with respect to the reason for her discharge and defendant is entitled to summary judgment on a retaliation claim.

In the absence of direct evidence of retaliation in violation of Title VII and the MHRA, the Court applies the burden-shifting analysis of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). In order to prevail on her retaliation claim, plaintiff must establish a <u>prima facie</u> case by putting forward evidence that (1) she opposed a practice made unlawful by Title VII and the MHRA, (2) her employer subsequently took adverse action against her, and (3) a causal connection exists between the protected activity and the adverse employment action. <u>Stuart v. General Motors Corp.</u>, 217 F.3d 621, 634 (8th Cir. 2000). If plaintiff establishes a <u>prima facie</u> case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.

McDonnell Douglas, 411 U.S. at 802. If defendant articulates such a reason, plaintiff must then demonstrate that defendant's reason is a pretext for discrimination. Id.; Kim v. Nash Finch Co., 123 F.3d 1046, 1056 (8th Cir. 1997). The burden of proving discrimination remains on plaintiff at all times. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515-16 (1993). Plaintiff must do more at the pretext stage than discredit defendant's reason; she must show that defendant's articulated reason is a pretext for discrimination. See id.; see also Ryther v. KARE 11, 108 F.3d 832, 837 (8th Cir.) (en banc), cert. denied, 117 S. Ct. 2510 (1997); Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 777 (8th Cir. 1995).

The Court finds that plaintiff has not established the third element of her prima facie case – that there is a causal link between her complaints and her termination. Plaintiff argues that such a link exists as evidenced by the short period of time between her first complaint on November 19, 1999 and her termination on February 16, 2000. Generally, more than a temporal connection between the protected activity and the adverse action is required to present a genuine factual issue on retaliation. Smith v. Allen Health Sys., Inc., 302 F.3d 827, 832 (8th Cir. 2002). In the three months that elapsed from plaintiff's complaint and her termination, Clark received three negative reports regarding plaintiff's conduct, in addition to the information he learned while investigating her complaints. In light of those reports, the temporal connection between plaintiff's complaint and her termination, without more, is not sufficient to support an inference of retaliatory motive.

Even if the Court were to find that plaintiff has established a <u>prima facie</u> case, she has not met her burden to demonstrate that defendant's reason for discharging her was a pretext for retaliation. Clark terminated plaintiff because he believed she submitted a false report of harassment with the intention of ruining Swoboda's career. Clark interviewed the two individuals whom plaintiff claimed had witnessed Swoboda's offensive comment and neither of them supported plaintiff's allegation. Clark also received Wegierski's report that plaintiff publicly stated she wished to harm the careers of three pilots, including Swoboda. While plaintiff disputes the contents of Wegierski's report, she does not claim that Clark doubted or had any reason to doubt Wegierski's veracity. Plaintiff has not put forward evidence which would support an inference that Clark was actually motivated by retaliatory animus when he terminated her employment.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [#29] is **granted.**

A separate judgment in accordance with this memorandum and order shall be entered this same date.

_/s/ Carol E. Jackson_
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 10th day of October, 2002.

UNITED STATES DISTRICT COURT - EASTERN MISSOURI
INTERNAL RECORD KEEPING

AN ORDER, JUDGMENT OR ENDORSEMENT WAS SCANNED, FAXED AND/OR MAILED TO THE FOLLOWING INDIVIDUALS ON 10/10/02 by lwilderm
               4:01cv93    Ray vs Trans States Airline

42:2000e  Job Discrimination (Employment)

```
James Foster -  3129        Fax: 314-567-5968
David Hayes  - 74343        Fax: 314-222-4311
David Heimos -  8069        Fax: 314-862-0605
William Jones - 25575       Fax: 314-567-5968
```

SCANNED & FAXED BY:
OCT 10 2002
SAJ